**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 23-100** (Raleigh County CC-41-2021-F-378)

**Semaj Nygee Lowery,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Samaj Nygee Lowery appeals the sentencing order of the Circuit Court of Raleigh County entered on January 4, 2023, following his convictions for felony possession of a firearm and the misdemeanor offenses of defective equipment, obstruction of an officer, and possession of marijuana.[1] The petitioner argues that there was insufficient evidence to support a conviction of felony possession of a firearm, that the circuit court erred in issuing rulings related to hearsay during the trial, and that the proper procedures were not followed regarding the recidivist enhancement to his sentence. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The petitioner was stopped by West Virginia State Troopers Cox and Richardson based on an alleged defective rear registration light and driver's side tail lamp. At trial, the troopers testified that the petitioner became belligerent, refused to produce his license and registration and follow other instructions, and was talking on his cell phone. They also testified that they smelled marijuana and so ordered the petitioner to exit the vehicle. They testified that they had to assist the petitioner out of the vehicle, and, when they opened the door, they saw a clear bag containing what they believed to be marijuana in the driver's side pocket. According to the troopers, the petitioner resisted and was placed in restraints while they further searched the vehicle. After the petitioner was arrested and placed in the cruiser, the troopers testified that he kicked the door or window, requiring further restraint. The troopers then returned to search the vehicle and testified that they observed a firearm in plain sight on the floor under the driver's seat. It appeared to the troopers that the firearm was within the reach and control of the petitioner when he was sitting in the driver's seat and that the petitioner would have seen the gun when operating the vehicle. The police car was not equipped with video, and neither trooper was wearing a body camera. The troopers transported the petitioner to the Beckley Detachment of the State Police where they contended that he continued to be noncompliant and belligerent, including spitting on one of the officers. A

---

[1] The petitioner is represented by counsel Jason T. Gain. The State is represented by Attorney General Patrick Morrisey and Assistant Attorney General Mary Beth Niday.

criminal history check revealed that the petitioner was convicted of felony wanton endangerment involving a firearm on October 14, 2016.

In September 2021, the petitioner was indicted on nine counts, and he was ultimately tried on five of those counts: 1) possession of marijuana; 2) defective equipment; 3) obstruction of an officer; 4) assault on a government representative; and 5) felony possession of a firearm by a prohibited person. Before trial, the State filed a motion asking the circuit court to take judicial notice of the petitioner's prior criminal conviction and sentence for wanton endangerment involving a firearm. Citing confusion, prejudice, and the potential to mislead the jury, the petitioner filed a motion in limine to prohibit the State from "presenting evidence or mentioning to the jury that [his] prior felony conviction was Wanton Endangerment."

At the final pretrial meeting, the parties discussed presentation of his prior wanton endangerment conviction to the jury. The petitioner agreed to "stipulate that he has a prior felony conviction," further agreeing that "we are stipulating [that the petitioner] was a convicted felon, we're stipulating that he's not permitted to carry a firearm." The petitioner also did not object to the State's motion to take judicial notice of the conviction, but he requested that the circuit court not allow evidence that the conviction was for wanton endangerment. The State explained that the probative value of allowing evidence of the wanton endangerment conviction was that the statute criminalizing the possession of a firearm by prohibited persons provides certain penalties for certain "felonies of violence." Ultimately, the State agreed that a stipulation would be appropriate, so long as it stated the petitioner was a prohibited carrier, convicted of a crime with a penalty of more than one year in the penitentiary, and so satisfied the elements of felony (as opposed to misdemeanor) possession. The petitioner's counsel indicated that was acceptable and "all h[e] wanted." The hearing related to this issue concluded with the circuit court stating its position that it would "instruct the jury—and we can work on the fine language of that—that the parties have agreed and the court can take judicial notice of the fact that the [petitioner], based upon a prior conviction, is a prohibited person from possessing a firearm . . . ." The circuit court's September 19, 2022, order on the pretrial motions reflects that there was no objection to the State's motion requesting that the court take judicial notice of the wanton endangerment involving a firearm conviction and sentence, and it, therefore, took judicial notice that "by prior felony conviction in the Circuit Court of Raleigh County, West Virginia, [the petitioner] is and was at the time of the alleged crimes a prohibited possessor of a firearm."

Before the State called its first witness at trial, at the State's unopposed request, the circuit court advised the jury that the parties agreed that it would be told "that the issue of whether or not [the petitioner] was prohibited from carrying a gun has been agreed to. He is, in fact, a person who is prohibited from having that." "Therefore," the circuit court continued, "the State will not be calling any witnesses that will testify as to the facts or the circumstances that resulted in that. You are not to concern yourself with the reasons as to why he could not carry a firearm, but only to know that he is prohibited from having a firearm in his possession."[2] Again, the petitioner had no objection.

---

[2] Although the circuit court termed the issue as one of "judicial notice" rather than a stipulation in its pretrial order and at the beginning of the trial, in all instances, it framed its remarks to the jury as taking notice of what the parties agreed to, referencing the oral stipulation.

The State proceeded to call the two troopers who conducted the traffic stop, and they testified as to the interaction as set forth above. The State also entered into evidence the firearm and the ammunition from the firearm. The petitioner called three witnesses: the owner of the car, the petitioner's sister; Ms. Robin Buck, a friend who was on the phone with the petitioner during the beginning of the traffic stop; and the petitioner. The petitioner's sister testified that it was her firearm in the car that she put under the seat of the vehicle, that she did not tell her brother about the firearm, and that you could not see the firearm when driving the car. His sister also testified that when she retrieved her car, she checked the lights, and they were all working. She further testified that she did not need to have any repairs on the car after the arrest. Ms. Buck testified that she was the owner of the establishment where the petitioner was before the incident and was also friends with the petitioner. When she began testifying to the call she received from the petitioner during his traffic stop, the circuit court halted the testimony and called counsel to the bench. The circuit court was concerned that questions about the call could elicit hearsay because it was unknown at that time if the petitioner was going to testify and because Ms. Buck may testify regarding what she overheard the petitioner say. After some additional questions, Ms. Buck was excused, but she was recalled after the petitioner testified. At that time, she testified that, during her phone call with the petitioner, she did not hear him become belligerent, curse, or be aggressive.

The petitioner testified that the car he was driving belonged to his sister, that it was her firearm under the driver's seat, that he had no knowledge of the firearm and that he could not see underneath the seat from his position. The petitioner testified that the car was in good working condition with no headlight or taillight out. He was not aware of why he was stopped until after he was put in the police car. Although, the petitioner denied being immediately belligerent, he admitted that at some point he became belligerent. He claimed that he did not know the police were going to search the car and did not know what they found until he read the indictment. The petitioner also testified that he called Ms. Buck when he was stopped because he knew there was a possibility that he would be in trouble given the marijuana he had in the car. He also testified as to the "scuffle" between himself and the officers.

After closing arguments, the circuit court instructed the jury and included an instruction regarding the State's burden relating to the petitioner's prior conviction. The court instructed the jury in a manner that was in line with the petitioner's desire to avoid presenting the specifics of that conviction:

> [T]he State will not be calling any witnesses that will testify as to the facts or the circumstances that resulted in [the petitioner's wanton endangerment conviction]. You are not to concern yourself with the reasons as to why he could not carry a firearm, but only to know that he is prohibited from having a firearm in his possession.

The petitioner did not object to this instruction.

The jury convicted the petitioner of one count of felony possession of a firearm and the misdemeanor offenses of defective equipment, obstruction of an officer, and possession of marijuana. The jury acquitted the petitioner of assault on a government officer. After conviction,

3

the State filed a "Notice of Information of Prior Conviction," alleging that the petitioner was previously convicted by a plea of guilty of wanton endangerment involving a firearm, an offense punishable by confinement in the penitentiary for a term greater than one year, which the petitioner had admitted. After the jury verdict was presented, the State asked that the jury be retained, and, after discussion, the circuit court stated, "I believe the State is asking the court to consider recidivism as part of any potential sentencing in this matter." The petitioner's then-counsel indicated he thought that could be handled at the sentencing hearing and the circuit court replied that he believed the State wanted "to know whether or not your client is going to challenge the previous conviction or the recidivism application." The petitioner's counsel replied "No, Your Honor." A written order was entered shortly thereafter, indicating that the circuit court would consider the applicable penalty enhancement in sentencing given the petitioner's admission.

At the sentencing hearing, the circuit court heard from the State, the petitioner's counsel, and one of the petitioner's family members. The petitioner also elected to speak, stating "I agree with the prosecution that I do have a very long, length[y] criminal sentence [sic] as due to a past of bad judgment." At the conclusion of the hearing, the circuit court announced the sentence as a determinate three-year sentence and then doubled it to a six-year sentence due to his habitual offender status. The State filed a motion pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure to correct an illegal sentence without explanation. The petitioner did not file post-trial motions. On January 4, 2023, the circuit court entered its sentencing order, sentencing the petitioner to fines for the misdemeanor convictions, one year of imprisonment for the felony possession of a firearm conviction, and an additional five years imprisonment as an enhancement based on the recidivist information. After sentencing, the petitioner was appointed new counsel and appealed to this Court.

Here, the petitioner asserts four assignments of error. First, he contends that there was not a proper stipulation regarding his prior wanton endangerment conviction, so the jury was not presented with evidence of all the required elements of felony possession of a firearm, and, therefore, the evidence was insufficient to support that conviction. Second, he contends the circuit court erred by improperly prohibiting the testimony of Ms. Buck as hearsay. Third, the petitioner contends that the proper procedures were not followed for a recidivist enhancement to his sentence. In his fourth and final assignment of error, the petitioner does not identify any new claimed error; rather, he asserts that if the preceding assignments of error were not properly preserved below, they should be reviewed under the plain error doctrine.[3]

---

[3] In his final discussion of plain error, the petitioner references, in passing, the petitioner's trial counsel's arguments related to a motion to suppress the firearm prior to trial. He clarifies that he "is not attempting to raise ineffective assistance of counsel on direct appeal . . . but only mentions it to highlight how the errors complained of 'seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings' in this case.'" Likewise, the petitioner mentions certain unrelated claimed "weaknesses" in the case against him in his argument related to the second assignment of error, again without detail or argument in support. Those passing references are unrelated to any assignment of error and so are not properly before this Court. Accordingly, this Court will not separately address these issues in this appeal. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues

*Sufficiency of evidence*

In his first assignment of error the petitioner contends that there was an inadequate or failed stipulation regarding the petitioner's status as a person prohibited from possessing a firearm under West Virginia Code § 61-7-7.[4] He contends that there was no evidence presented at trial to support the contention that his prior wanton endangerment conviction was a "felony crime of violence" to, in turn, support his conviction here for felony possession of a firearm by a prohibited person. Without evidence to support that his prior conviction was a "felony crime of violence," he argues that the evidence was sufficient to support a conviction of only misdemeanor possession of a firearm by a prohibited person. The petitioner further argues that the stipulation does not suffice to warrant the felony conviction because the stipulation was not proper. Specifically, he contends it was not in writing or signed, as required by West Virginia Trial Court Rule 42.05, and it did not follow the process set out in *State v. Nichols*, 208 W. Va. 432, 445, 541 S.E.2d 310, 323 (1999), *overruled on other grounds by State v. McCraine*, 214 W. Va. 188, 588 S.E.2d 177 (2003), *and reinstated by State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014), which required an appropriate colloquy between the circuit court, the petitioner, and the petitioner's then-counsel

---

presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." (citation omitted)).

[4] West Virginia Code § 61-7-7 provides, in relevant part,

(a) Except as provided in this section, no person shall possess a firearm, as such is defined in section two of this article, who:

(1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

. . . .

Any person who violates the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $100 nor more than $1,000 or confined in the county jail for not less than ninety days nor more than one year, or both.

(b) Notwithstanding the provisions of subsection (a) of this section, any person:

(1) Who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense; . . .

(2) . . . and who possesses a firearm as such is defined in section two of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correctional facility for not more than five years or fined not more than $5,000, or both. . . .

5

identifying the precise stipulation and demonstrating that it was made "voluntarily and knowingly." We review this assignment of error to determine if any rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

West Virginia Code § 61-7-7 prohibits any person convicted of a felony from possessing a firearm, a person possessing a firearm who was previously convicted of "a crime punishable by imprisonment for a term exceeding one year," is guilty of a misdemeanor, while a person possessing a firearm who was convicted of "a felony crime of violence against the person of another" is guilty of a felony. During the pretrial proceedings the petitioner actively negotiated a suitable manner for presenting his prior wanton endangerment conviction to the jury. He immediately offered to stipulate to the prior conviction; he also failed to object to the State's proposal of having the circuit court judicially notice the prior conviction, given the State's cognizance of its burden to show, in this instance, that the petitioner's prior conviction was a crime of violence. Defense counsel advised the circuit court that "all [the petitioner] wanted" was a course that avoided the potential prejudice that may have resulted from the jury knowing the nature of his prior conviction, as was his right. *See Nichols*, 208 W. Va. at 442-44, 541 S.E.2d at 320-22 (discussing right to stipulate to prior conviction due to prejudice that can result from jury hearing name and nature of prior conviction). Then, the circuit court instructed the jury regarding the State's burden relevant to the prior conviction in a manner that was in line with the petitioner's desire to avoid presenting the specifics of the petitioner's prior conviction. In so doing, the circuit court advised the jury—without objection and, again, compliant with "all [the petitioner] wanted"—that

> the State will not be calling any witnesses that will testify as to the facts or the circumstances that resulted in [the petitioner's wanton endangerment conviction]. You are not to concern yourself with the reasons as to why he could not carry a firearm, but only to know that he is prohibited from having a firearm in his possession.

Under these facts, the petitioner cannot now complain that the State failed to prove that the conviction that resulted in his status as a person prohibited from possessing a firearm was one of violence to, in turn, support a felony possession of a firearm by a prohibited person conviction. The petitioner got "all [he] wanted," and if the petitioner was aggrieved by the circuit court's implementation of his request at subsequent stages, he had the obligation to object. *See State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996) ("When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time."). Among other justifications for the raise or waive rule, it is designed to protect against the very risk at issue here: "It prevents a party from . . . planting an error and nurturing the seed as a guarantee against a bad result[]." *Id.* Furthermore, active involvement in an occurrence to which error is later assigned—like the petitioner's conduct here— likewise results in a waiver of the right to assign error to the occurrence. *See State v. Miller*, 193 W. Va. 3, 17, 19, 459 S.E.2d 114, 128, 130 (1995) (finding that the petitioner waived her right to challenge the trial court's failure to give an instruction on self-defense where the petitioner offered

no such instruction, failed to object to the court's failure to offer such instruction, expressed satisfaction with the jury charge, and affirmed that she had no objection to the charge). Finally, we note that "[a] deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. *Id.* at 7, 459 S.E.2d at 118, Syl. Pt. 8, in part. As such, any error, if there be one, has been extinguished by the petitioner's waiver, and we do not review for plain error. Because the petitioner's sufficiency of the evidence claim is predicated solely on his failed challenge to the manner in which his prior wanton endangerment conviction was presented to the jury, this assignment of error necessarily fails.

*Hearsay*

Next, the petitioner argues that the court improperly excluded testimony from Ms. Buck regarding what she overheard when she was on the phone with the petitioner during the traffic stop as hearsay. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). In this case, there does not appear to have been a specific exclusion of testimony. Instead, Ms. Buck's testimony was, at most, interrupted. Following that interruption, the petitioner recalled her, and she testified, without objection, that she did not hear the petitioner curse or become belligerent or aggressive during the portion of the interaction that she overheard. The petitioner identifies no other testimony that she was precluded from (or, rather, delayed in) offering. Because Ms. Beck was ultimately permitted to testify as to the information the petitioner desired to elicit, he has established no abuse of the circuit court's discretion, and the assignment of error lacks merit.[5]

*Recidivist proceedings*

For his final assignment of error, the petitioner argues that the circuit court erred in failing to follow the mandatory provisions of West Virginia Code § 61-11-19, the statute regarding recidivism enhancements to criminal sentences. The petitioner argues that the record does not demonstrate a proper admission to the recidivist information and that the burden should be shifted to the State to demonstrate the admission was appropriate. Vaguely, the petitioner contends that the circuit court appears to have failed to conduct a "required colloquy" with him related to the recidivist information. Although the petitioner fails to elaborate fully on his argument, we construe this to be related to whether the petitioner was "duly cautioned" by the circuit court prior to his admission. He points to the State's Rule 35(a) motion as further evidence in support of his contention that the sentencing procedure was "scrambled and deficient."[6]

_____

[5] Without having identified any error in the first instance, there is no need for this Court to review this assignment of error for plain error.

[6] The petitioner appears to contend, in passing, that the circuit court erred in setting the length of the petitioner's sentence during the hearing, but it is undisputed that the written order entered reflects a sentence appropriate under West Virginia Code § 61-11-19. "It is a paramount principle of jurisprudence that a court speaks only through its orders," so "it is clear that where a

As this is, again, an issue raised for the first time on appeal, our review is for plain error. Following the filing of a recidivist information, West Virginia Code § 61-11-19 provides, generally stated, that a defendant can acknowledge being the same person previously convicted or, if denied, then it is a question for the jury to resolve. Regarding the former method of establishing identity, and of relevance to the petitioner's specific argument, West Virginia Code § 61-11-19[7] provides that

> after being duly cautioned if he or she acknowledged in open court that he or she is the same person, the court shall sentence him or her to such further confinement as is prescribed by § 61-11-18 of this code on a second or third conviction as the case may be[.]

This procedural requirement, and the others specified in the statute, are mandatory and jurisdictional for the imposition of a recidivist enhancement to a sentence and are not subject to a harmless error analysis. Syl. Pt. 1, *Holcomb v. Ballard*, 232 W. Va. 253, 752 S.E.2d 284 (2013).

The record on appeal is clear that the petitioner admitted to the prior conviction in this case both pretrial, as discussed above with regard to the oral stipulation, and post-trial, after the verdict was entered and during the sentencing hearing. And before this Court, the petitioner does not contend that he was not the person convicted in the charge presented in the recidivist information. As he petitioner's "acknowledgement" of being the same person was clear, we move to the "duly cautioned" requirement of the statute. We have held

> [t]he words 'duly cautioned' contained in the West Virginia recidivist statute, Code, 61-11-19, as amended, with regard to former convictions and sentences before a valid judgment can be imposed for an additional sentence as provided in Code, 61-11-18, as amended, are fully complied with when the accused, after being convicted of the substantive offense and before being sentenced thereon, is later brought before the court in the same term and advised that the prosecuting attorney has filed a written information informing the court of former convictions and sentences; and the court then proceeds to advise the accused of the nature of each former offense and of the time and place of each former sentence, and then after giving the accused an opportunity to say whether he has any defense thereto, asks him if he is the same person as was formerly convicted and sentenced. If he answers in the affirmative, appropriate sentence may be pronounced in accordance with the statute.

Syl. Pt. 4, *State ex rel. Mounts v. Boles*, 147 W. Va. 152, 126 S.E.2d 393 (1962).

---

circuit court's written order conflicts with its oral statement, the written order controls." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006).

[7] The petitioner does not challenge the other requirements of the statute, including the timing of the filing of the recidivist information or its contents. The petitioner likewise does not appear to substantively dispute that he was the defendant identified in the prior conviction.

As discussed above, the petitioner admitted that he was the defendant identified in the conviction specified in the recidivist information during pretrial proceedings and sought to limit evidence as to that conviction being presented to the jury. After the jury verdict in the underlying proceeding, the petitioner was advised that the State had filed a written information containing the petitioner's former conviction and sentence. The circuit court gave the petitioner an opportunity to assert a defense after the State asked whether the jury should be retained. The petitioner stated his intention not to offer a defense, explicitly advising that he intended not to challenge the recidivist information or consequent sentencing enhancement.[8] As stated above, the petitioner's claim of error is vague and premised on an invitation to the State to show that the procedure related to the petitioner's acknowledgment was error-free. Of course, it is the petitioner's burden to demonstrate error, and, based on the foregoing, it is not clear to this Court that there was any unwaived error in the procedure related to the petitioner's acknowledgement of being the same person identified in the recidivist information. Accordingly, the petitioner is entitled to no relief. Here, even if the petitioner's actions did not operate as a waiver, any error is immaterial and did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings given the petitioner's pretrial motion in limine, stipulation, statements after trial, and comments at sentencing. *See LaRock*, 196 W. Va. at 299, 470 S.E.2d at 618, Syl. Pt. 7 ("An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. . . . [The plain error doctrine] should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings."); *State ex rel. Delligatti v. Cohee*, No. 22-921, 2023 WL 3676890 (May 26, 2023) (memorandum decision) (finding harmless error in recidivist proceeding based on an immaterial scrivener's error in a recidivist information that was corrected by an amended filing that was filed in the underlying criminal matter rather than the subsequently opened recidivist matter).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 29, 2024

---

[8] The circuit court's September 23, 2022, order also reflects that a discussion related to the petitioner's admission occurred. No objection was made to that order, and the petitioner does not affirmatively claim that the discussion did not occur, although it was not reflected in the transcript. There is a presumption of regularity of court proceedings that remains until the contrary appears, and, contrary to the petitioner's attempt to shift the burden to the State in this case, he has the burden of proving any irregularity. *See* Syl., in part, *State ex rel. Smith v. Boles*, 150 W. Va. 1, 146 S.E.2d 585 (1965) ("There is a presumption of regularity of court proceedings that remains until the contrary appears, and the burden is on the person who alleges such irregularity to show it affirmatively . . .").

9

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

Wooton, Justice, dissenting:

Around 2:25 a.m. on September 18, 2020, the petitioner Semaj Nygee Lowery, a young black male, was driving a blue BMV vehicle in the Mabscott area of Raleigh County, West Virginia, when he was stopped by two West Virginia State Police Troopers for having a defective rear right registration light and a defective driver's side tail lamp. This traffic stop ultimately led to the state troopers' discovery of a gun under the driver's seat and the petitioner being convicted of being a prohibited person in possession of a firearm, a felony upon which the circuit court then imposed a recidivist enhancement.

The petitioner's sister testified that she owned the BMW the petitioner was driving that night (he had borrowed the car from her). She also testified that she kept a gun – which she owned – under the driver's seat for protection, and that it could not be seen while driving the vehicle. The petitioner testified that he did not know that the BMW had any defective registration light or taillight, and that he did not know there was a firearm under the seat. There was no conflicting evidence regarding ownership of the automobile or the gun.

Notwithstanding the petitioner's evidence offered in his defense, following a one-day jury trial, this misdemeanor traffic stop for vehicle equipment-related issues resulted in the petitioner being sentenced to a total of six years in the West Virginia Penitentiary. The petitioner was convicted by a jury of one felony (being a prohibited person in possession of a firearm) and three misdemeanors (having defective equipment, obstructing, and possession of a controlled substance

10

(marijuana)).[1]  He was then sentenced to a determinate period of one year in the West Virginia State Penitentiary for the felony conviction of being a prohibited person in possession of a firearm, which conviction then led to an enhancement – a determinate five years to that initial sentence, resulting in a total of six years for his felony conviction pursuant the West Virginia recidivist statute.[2]  *See* W. Va. Code § 61-11-18.

A potential issue in this case that was neither raised below nor on appeal is whether the statutory sentence for possession of a firearm by a prohibited person set forth in West Virginia Code § 61-7-7, which requires proof of an underlying conviction as an element of the crime, can then by enhanced in a recidivist proceeding based on that same underlying conviction.  *See id.* § 61-11-18(a)(58).  While there are many reasons a person can be prohibited from possessing a firearm, the reason used in this case was that the petitioner was a prohibited person by virtue of his prior conviction for "a felony crime of violence against the person of another," i.e., wanton endangerment involving a firearm.  *See id.* § 61-7-7.

The issue, which could have constitutional double jeopardy implications, is worthy of further development and exploration through research and briefing by scheduling this case for oral argument.  At its core, it appears that the petitioner has received multiple sentences for the same underlying wanton endangerment conviction; he was originally sentenced to a period of one year for his conviction on that crime in 2016 and is now being sentenced essentially two more times for that crime – both as an element of the crime of possession of a firearm by a prohibited person, *see id.* § 61-7-7, and under the recidivist statute.  *See id*. § 61-11-18(a)(58).  The imposition of such a lengthy sentence, resulting from a traffic stop supposedly due to a defective taillight – a misdemeanor – is susceptible to a closer examination by this Court.

For the foregoing reasons, I would have scheduled the matter for oral argument. Accordingly, I respectfully dissent.

---

[1] He was found not guilty of the charge of assault on a governmental representative.

[2] The circuit court also imposed fines of $100 for each of his misdemeanor convictions.